Good morning. Please proceed. My name is Bob Blakemore, and I represent the appellant in this case, Sarah Tackett. And this is an appeal of the district court's granting of the Sheriff of Nowata County's motion to dismiss our Monell or municipal liability claim. This is a case involving sexual abuse of Miss Tackett while she was a pretrial detainee at the Nowata County Jail. Counsel, can I ask you a procedural question? The case against the officer, is it still proceeding or is it still a live case? No, sir. So we we voluntarily dismissed the claim against Mr. Lowen in order to have the ability to appeal the decision on the motion to dismiss the sheriff. And so that's how that's how we're here. OK, fair enough. And that that dismissal, was it with prejudice? Yes. OK. Yeah, because otherwise we wouldn't have had the ability to appeal until we would have gone all the way through trial and all that. That's why I was asking. Yes. So there are, as the court knows, four elements of a municipal liability claim. The first one being an underlying violation. Normally you have to show there's an underlying constitutional violation. That's not an issue here. Second is you have to establish that there's a policy, an official policy or custom. I don't believe that's an issue in this appeal either, because what Judge Brazell held below, and I'll quote here, is that he could reasonably infer that the NCSO, that's the Nowata County Sheriff's Office, had an informal policy or widespread practice of understaffing and violating policies related to staffing requirements to accommodate prisoners' genders. And that's at Appellate Appendix 158. So I believe that I don't really believe that that element is an issue either. He doesn't really address the third element, which is causation. So I don't think that's an issue. So it really comes down to state of mind. So first, I agree with what you've said so far. OK. So if we're talking about deliberate indifference and here where I'm struggling is that you have allegations that Defendant Lowen was sexually harassing his colleagues. And we have to apply a rigorous standard of causation and culpability. That's what the Supreme Court dictates in these cases. And we have to make a inferential leap that from the harassment of the colleagues, we get to deliberate indifference of assault of an inmate. And I'm what is your best argument or what case can you point us to that that permits that kind of inferential leap on the basis of the allegations in your complaint? I believe that you have to look at it. You have to look at all of the allegations of the case and read them together. So it's not just simply that he was sexually harassing his co-workers, although, you know, if I I know that if I had made some of the comments and done some of the things that he had done, I would fully expect to be fired. He was not. The complaint went up to the sheriff. And it's our understanding, again, we haven't had the opportunity to do depositions yet, but it's our understanding, based on the information that we do have, that he was not disciplined. There was no additional training. He clearly wasn't terminated. They kept him on staff afterwards. And so you look at that in addition to the context in which he was being single staffed to monitor the female inmates on his own. Is just a month prior, a little bit over a month prior, the previous sheriff had resigned and. Almost the entirety of the sheriff's office staff had resigned along with her, and so they were actually having to use unpaid volunteers. To staff the jail. So it was really a staffing crisis. There was a there was a quote made in the media by the sheriff at that time that the condition of the jail was such that it does not comply with constitutional standards. So is it your argument that notwithstanding? Well, first, let me ask you this. The district court said that you had no allegations of prior instances of sexual abuse of inmates in your complaint. Is that correct? It's we come close because I believe that what there is some evidence that when he they actually put low on after he had been sexually harassing his female coworkers, they put him in also in a position to train a new hire. And that was his name was Robert Parks, and he made a statement to Mr. Parks that he was going to show him how to get sexual favors from the inmates. There was no evidence presented that the sheriff ever knew about that. We don't know. Again, we don't we don't know at this point. So isn't that I mean, this this whole thing is about what the sheriff should have known reasonably should have known with regard to the risk of having loan there at the department. How would he have known that that particular statement that he made to the other guard? How would he have known that that would have, you know, should have raised concerns for him if he if he would have no evidence he even heard it. You know, there's just no evidence of that. Well, of course, I mean, one of the problems is that, again, we were at the pleading stage and we're having to plead these things without having additional discovery. I mean, what we typically find is that when you have this kind of information, the beginning, the more that you dig, you get additional information as to what was known. Our argument is, is that that Lowen's behavior was so brazen and the way that he was acting was so out in the open that, again, it's that objective standard under Barney that if the risk is so obvious that the sheriff should have known that that's sufficient. But don't we have to be really specific about what risk we're talking about? That is, I mean, I agree with you that the law requires that it has to be plainly obvious, highly predictable, but but what is the it that we're looking at? Well, isn't it the the abuse? Yes. And I and I believe, again, if you couple what was known about the about Lowen, I mean, including there was this complaint about him like licking his finger and putting it in one of the his co-workers ear and making sexual comments. I mean, that's that's pretty reprehensible. And so and then you couple that again. And we're looking at we're looking at all this, the facts together. You couple what was known about his reprehensible conduct with the fact that you have the staffing crisis and then you put him in a position where he's one on one has control and and supervision over these female inmates. I think, again, that at the 12 B6 stage that that's enough to say that it's plausible that they were on notice that there was a substantial risk that he would sexually abuse the female. Do you agree that we have to go ahead? Do you agree that we have to make an inferential leap, though, to get to your position here? I mean, because of the the allegations in your complaint are not about sexual abuse of inmates. They are about harassment of a colleague, none of which, as you said, it's all, as alleged, reprehensible. However, don't we have to make an inferential leap from that to be substantially certain that that means there will be sexual abuse of an inmate? You agree with that, right, that we have to infer it? It's not, you know, we have not we have not alleged we don't have any evidence at this point that he specifically was sexually abusing other inmates other than, again, the comment that was made to Mr. Parks. But OK, let me stop you for a minute. So do you agree that we have to go with? I mean, what you alleged in the complaint, you didn't allege that Parks told the sheriff. Right. Correct. OK. You didn't allege that somebody else told the sheriff. There's no allegation that anyone told the sheriff that he made that comment to Parks because we have to deal with the sheriff's knowledge. Right. Correct. OK. And then as far as I think there was another allegation of sexual harassment and we have no allegation in the complaint that that was reported to the sheriff. What we have, the Morris allegation, right? Yes. Morris reported. Right. The sexual. And so that one was reported. But then there wasn't there another one or two. Right. But that was the other one was not reported. I don't know. I don't know. Well, it's not like we don't allege that. Yeah. OK. So. And we have no allegations about prior abuse of an inmate by anyone. Correct. OK. Do we have. Any allegation about how many jailers were on duty for the whole jail that night? It's my understanding that there was at least earlier there was one jailer that was in booking and then they had Lohan monitoring the entire jail. It's single staffed. OK. And that that's consistent with their like a longstanding pattern of understaffing at the jail. Fair enough. I'm just trying to determine whether there was anyone else at the jail with him. In charge of monitoring the entire the entire jail and being in charge of supervising the female inmates. Right. So I get your argument. I guess my concern is, is that at least in the cases that seem the most relevant to FOIA and Le Master, there was more than just one on one male supervision of female inmates. There was always a past assault of an inmate that the sheriff was aware about, aware of. Correct. Of course, both of those cases were at the summary judgment stage where they had the ability to develop the factual record, whereas this again, it's at the at the pleading stage. Fair enough. But I mean, you could have alleged these things on information and belief. I should have, but I'm not really I don't really. Which occurs a lot. It does. I I try not to do a whole lot of that. I mean, I want to I want to I want to make the allegations based on what we what we know. And again, I think what we know is enough. It the the substantial risk in this environment and under these policies and practices was there for the purposes of is this a plausible claim? Did we meet? Did we meet the low bar under 12B6? I think that I think that we have. What is your number one case as far as factual similarity? And it doesn't even have to be from here. You can give me one from another circuit if you want. Well, one one, I think I would like to mention kind of in the the inverse is it's footnote eight in Barney. So the the court says there that we the court was not going to find that there was a policy or custom or deliberate indifference because there was no evidence. And again, it was another summary judgment that there was any sexual harassment or abuse of inmates. So here again at the pleading stage, we have evidence that this man is a sexual harasser and that was known and there was no there was no remedial action taken. And then you couple that with the single staffing. I think that that that that applies. Address me to do these. Thank you, counsel. Thank you. Please support. My name is Rebecca Boyer, and I represent the sheriff of Nevada County in his official capacity in this claim. Essentially, what plaintiff is trying to do is to lower the standard of playing for municipal liability claims to a hands off or an anything goes approach, which is contrary to this court's pleadings or this court's requirements in Iqbal versus Twombly. And this court's precedence is following the Supreme Court's decisions in those cases. And it's our position that the lower court, the district court appropriately applied the correct standard for determining whether municipal liability exists in this case. And they found the district court found that there is no plausibility that gives rise to a claim for relief. And in doing so, the lower court looked at it. It took on its years of judicial experience and common sense and looked at the factual allegations, the actual factual allegations, not the conclusory allegations and included those few instances of albeit harassment towards female coworkers. What do you do? Agree that we're just talking about the state of mind element that we're not talking about the official policy or custom causation. Right. No, Your Honor. I don't believe that plaintiff has alleged any policy or custom that shows that this was in existence at the time to have put the sheriff on even notice and then to even cost him to have been deliberately indifferent to as such. So I don't agree with that assertion. And the lower. So I guess what I'm trying to understand is I thought that we had narrowed the scope of sort of what what was really contested between the parties here. And I think you're saying everything is contested, which is fair. That's your you're entitled to do that. But I'm having a hard time understanding how when the complaint with the pleading stage, the complaint is alleging a mass exodus of staff. The jail is run by volunteers. There is there allegations about sexual harassment of colleagues. How is it that Miss Tackett shouldn't have a chance to develop evidence about what the sheriff knew? Frankly, Your Honor, it's plaintiff's it's plaintiff's obligation at this point in time at a pleading stage to show that she's plausibly that her claim rises to a level of plausibility. And those allegations specifically regarding the jail. So there's two sort of factual allegations is how I've kind of divided it up. Those between the jail itself and those regarding the former jailer Lowman, who was fired after this incident. So in the allegations regarding the jail, plaintiff had access to years worth of Oklahoma State Department of Health inspection and division reports, which apparently he come through in order to put in a complaint. And in those years of inspection division reports, which includes investigations, complaints, the only thing that he could provide or that plaintiff could provide were those regarding that the jail was understaffed. That there are obviously clearly that there were structural issues with the jail that needed to be addressed. And those allegations of being understaffed and the issues regarding the jail don't give notice to the sheriff of the particular harm at issue. They don't give notice that that understaffing and jail conditions are going to lead a particular person or a jailer to commit sexual offense on an inmate. What if you have all of those things and the sheriff is on notice that he sexually harasses women? And so that's a good point. Let me get to that regarding the allegations regarding Lowman in particular, if that's what you're referencing, Your Honor. That's what I'm referencing.  So in regards to those specific allegations against Lowman himself, what we have are two instances of sexual harassment against female coworkers. Those are dispatchers who were not inmates inside of the detention center. Do you think that makes a big difference? And the fact that he was willing to engage in that type of conduct with women, period. Whether they're colleagues, whether they're fellow employees, whether they're inmates. Do you think it really makes a difference to say, oh, he was bad with people that he worked with? That doesn't mean he's going to be bad with others. I absolutely think it makes a huge difference because talking sexually and if the allegations, you look at the actual factual allegations. It's not just talking, it's sticking a finger in someone's ear, licking your finger and sticking it in someone's ear, a woman's ear. Yes. That's not invited. I mean, it's something that obviously she didn't want. Isn't that sort of the kind of conduct that you would expect a sexual offender to participate in? No, I don't believe that giving a wet willy to somebody and talking about wanting to have sex with them and talking about your sex life to coworkers, whether they're female or not, gives rise to belief that that person is going to commit a violent sexual offense against an inmate. I don't believe that that is a standard that this court has applied and I don't think that this is a type of notice requirement. I'm talking about telling another guard specifically how to get women to, inmates, to perform oral sex on you. And in regards to that specific allegation, one, there's no knowledge, there's no pleadings that the sheriff even knew about that and let alone that allegation. How is anyone ever going to find that out without discovery? You know, this is a problem that I see with the case, with your case, is that in all of the cases we're talking about, Tafoya, Barney, all of them that have been cited by both parties, these were all decided on summary judgment, at the summary judgment stage, when there's been depositions, where there's been extensive discovery. Here, there was none of that. We're at the pleading stage and we're making these determinations that the plaintiff somehow didn't know enough about what the sheriff knew. I mean, what if the sheriff did know and it's in an internal record somewhere that the department has? For instance, what if it was reported what he had told Parks? We would never know and the department would escape liability because we never got to the discovery stage. That's the whole problem with deciding these issues at the pleading stage, I think. And to go to your question regarding that, Judge Urias, the plaintiffs have access to several different avenues in order to gain information, like the State Department of Health. They also have access to Oklahoma State Court Networks and PACER. But in regards to the specifics, there's still, in regards to that very specific allegation with Mr. Lowen, that is just asking the municipal liability, that's asking the sheriff to be liable for a tort feeser. For what happened to one specific employee at one specific time. And that's not what Monell requires. We aren't responsible for the tortious actions of our employee. And that's the only thing that plaintiff has alleged in this case. And to allow this sort of pleading to go forward would be requiring Monell liability or sheriffs to be on notice that a wet willy in office talk, albeit inappropriate, it somehow puts them on notice that there is going to be a sexual offense in their jail. And that level of pleading and that level of requirement, I don't think is what our courts had in mind when they set out the Monell Moosevelt. Well, to the point about the procedural posture of the cases, do you have authority at the motion to dismiss stage that favors your position? Because the cases like Tafoya and even another case that I thought was helpful to you, Schneider, was also a summary judgment case. So do you have any cases that are at the pleading stage that we're at with the motion to dismiss stage? I believe we do. If you just give me one second. And regarding to the motions to dismiss, there still has to be a plausibility level of pleading. There has to be more than just the plain allegations that he did something wrong and that the jail is responsible for it. In regards to, I believe, Keith v. Croner and McKelland v. Factot, plaintiff has not shown in those cases, I believe it was on a motion to dismiss, where they haven't shown an affirmative link. Or that the sheriff was put on adequate notice or had deliberately indifference to such. Are those cases cited in your brief? I don't know. I would have to go back and double check. I'm sorry, Your Honor. Because you said McKelland, M-C-K-E-L-L-E-N? Yes, Your Honor. And Keith, K-E-I-T-H, is that what you said? Yes, Your Honor. Versus Croner? K-O-E-R-N-E-R. Can you give us the sites for those? I knew you were going to ask that. If you don't have them, that's okay. I don't want to take up your time. I might be able to find them in my notes, but I'm sorry. I don't have them off the top of my head right now. Okay. Let me ask a follow-up question. Yes, Your Honor. Have you seen any case where a court has decided against your position because it's at the motion-to-dismiss stage? Well, I'm sure that that has happened, of course. But we have to look at this particular fax and this particular case. No, I understand. Like a similar pleading and a court says, you know what, if this were at summary judgment, maybe you're okay. This is at the pleading stage, so I'm going to deny the motion-to-dismiss on that basis. I have not come across that on this particular issue, on this particular case or fax similar to that.  I'm not trying to make you make one up. I just wondered if you'd come across one. Well, it seems that if I'm understanding your argument correctly about sort of what law supports your position, you're asking us to look at Iqbal, Twombly, those lines of cases and just apply them here. And I think, is that a fair reading of your position? Yes, Your Honor. That the plausibility standard is the ring that rules them all for your argument? Yes, Your Honor. But what I'm struggling with is how to understand that in practice when we're trying to apply this, the test for what we look for, for when a violation is highly predictable or plainly obvious. And there are some inferential leaps that I think are required in this case. But what is your best argument for why they're inappropriate to be made on the pleadings here? Taking them all together. Taking all the pleadings together, what the pleadings basically show factually is that there were some structural issues with the jail and regarding its staffing. That doesn't put the sheriff on notice that a sexual offense is going to occur. And we have a couple instances where one particular worker was inappropriate with female co-workers, not jailers, or not inmates, excuse me, was at some point in time, at some instance during his career, inappropriate to two female co-workers by talking about his sex life opening and lamenting that he wanted to have sex with one of them and doing a wet willy. That those are not enough to raise the level beyond speculation, beyond even consistent with, but let alone plausibly, plausibility. Well, so what, you agree that the plaintiff here didn't need to show a pattern of unconstitutional conduct. That's not required, right? I believe that he does need to show a pattern of a constitutional misconduct, which he hasn't shown here. The pattern of conduct that plaintiffs alleges is not anywhere related to or not consistent with the actual harm that was committed on Mrs. Tackett. Well, deliberate indifference can be shown without a pattern. I mean, that's the law, right? Yes. Okay. So, and I think that that probably applies here. That standard applies. Whether it's satisfied is the subject of this case. But what is it in your view, and this may be an unfair question, but what's missing from the complaint? What is the sort of allegation that would have sufficed under your reading of the law to connect the dots? I think some instances would be like how this case has handled other incidences of municipal liability. Where we looked at other incidences of misconduct. Whether there had been other occasions of other jailers having performed any type of sexual offense against inmates. So we look at Tafoya v. Salazar, and I think that case is directly on point. Because in that case, the sheriff had not only actual notice, or constructive notice, but actual notice of the numerous prior instances of sexual misconduct. There were several cases that that sheriff had been involved in regarding the instances of sexual misconduct. Okay, well, so the problem is that if the law is that deliberate indifference can be shown without a pattern, and your response to my question of what's missing is a pattern, that doesn't really answer my question. So my question is on these facts, we're not talking about a totally hypothetical case. Although my question is a hypothetical question. On the basis of the facts alleged here, where the law does not require a pattern, but the law does require something that would suggest that a violation of the sort that occurred here was going to be plainly obvious or highly predictable. What is the missing allegation? I don't know that there is one, to be honest with you, because I don't know that plaintiff can show that in this case. That's where we are. Plaintiff hasn't alleged anything, and I don't know that plaintiff could allege it. I think the point assumes that, that the plaintiff assumed that the plaintiff has not shown it. What else could plaintiff have alleged? What should they have alleged to get them over the hump? That's a question for the courts to decide. If you're asking my opinion, I don't think that there is one in this particular case, because there has not been. This is a single tortfeasor. This is one single incident by one single actor. How about this? Upon information and belief, Lohan told another guard trainee how to get sexual favors from the female inmates. Upon information and belief, Lohan sexually harassed and, you know, made moves on another female dispatcher, and all of these things were reported to the sheriff. Still not enough? In my opinion, it's not enough in this particular case. Because those allegations of sexual harassment towards other female co-workers, and the trainee about how to get away with it clearly shows that he knew it was wrong, and he was doing stuff to avoid detection. And as the sheriff, it's the municipality that has to be put on notice of such, and I see that my time is up. Well, remember, we were on information and belief that he had reported it, that it had been reported to the sheriff that he was telling the trainee how to get sexual favors from the female inmates. That's not what it's alleged in the factual information. I know that. We're hypothesizing. And that's not what plaintiff argued to you as well. So even if the sheriff would have known, there had to have been adequate notice, and then remedial steps. But there's nothing to show that the sheriff had actual notice, and then was deliberately indifference to such. So it sounds to me like your position is the sheriff didn't. We have no way of knowing that the sheriff knew. But if the sheriff had known and had not taken any steps to prevent further conduct like this, then maybe we have liability. Only if there's additional elements there to meet the municipal liability claims, like a pattern, like other victims. So you're saying that absent somebody being raped prior to the one that we're talking about here, that they can never be held liable under that standard? I'm not saying that. I'm saying that there has to be something more. It sounds like you're saying that there had to have been prior sexual assaults of a similar kind before the sheriff could be found liable. Yes, I think there has to be. And that's what our precedent in this court has upheld in Barney. It's upheld in Tafoya v. Salazar, that the sheriff has to be put on adequate notice of the particular harm. Thank you. Thank you, Counsel. Thank you, Your Honors. Judge Rodriguez, anything else? All right. Thank you. Well, did you have any time left over? I did not. Would you like some? If you have any additional questions. Let's give you a minute and a half. Not everybody takes this up on it. Well, it's just whether you have any additional questions. Oh, no, I don't have anything else. Anything? Where did the information regarding the allegation you made about him low and telling Parks, I think his name was?  How to get away with sexually assaulting an inmate, where did that information come from? That was from a post-event investigation that we were able to obtain. Someone told you that that had happened? Yes. Okay. But you didn't have enough information, you didn't feel comfortable enough to state or to imply in the complaint that somehow the sheriff must have known about this? No. Again, our allegation is that his conduct was so open and blatant that the sheriff should have been on notice of the risk. But we don't know whether he was on notice of that specific allegation. All right. Thank you, Counsel. Anything else? Thank you. The case will be submitted and counsel are excused.